IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KAREEM HASSAN MILHOUSE,** : | **CIVIL NO. 1:CV-11-00294** |
| Petitioner : | (Judge Rambo) |
| v. : | |
| **B.A. BLEDSOE,** : | |
| Respondent : | |

# M E M O R A N D U M

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Kareem Hassan Milhouse ("Milhouse"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). Milhouse alleges that his constitutional rights were violated in the context of a disciplinary proceeding. For the reasons that follow, the petition will be denied.

## I. Facts

On December 4, 2009, at approximately 10:55 a.m., while collecting food trays in USP-Lewisburg's Z-Unit, Officer Figlio, S.O.S., arrived at the cell of Milhouse and his cellmate. (Doc. 8-1 at 16.) The Officer observed Milhouse "standing in full view of his cell door window calling this Officer's name and stroking his exposed penis, engaged in the act of masturbation, while looking at this Officer." (*Id*.)

As a result of this incident, Milhouse was issued an incident report charging him with Engaging in a Sexual Act and Indecent Exposure, in violation of Sections 205 and 300 of the Bureau of Prisons' ("BOP") disciplinary code, respectively. (*Id.*) The incident report was delivered to Milhouse at approximately 11:30 a.m. on that same day, December 4, 2009. (*Id.*)

An investigation was conducted on December 4, 2009, commencing at 11:30 a.m. (*Id.* at 17.) The investigating officer, Thomas Brouse, advised Milhouse of his rights and gave him a copy of the report. (*Id.*) The officer noted that Milhouse made no statement and displayed a poor attitude. (*Id.*) After completing his investigation, Officer Brouse referred the incident report to the Unit Disciplinary Committee ("UDC") for further review. (*Id.*)

The UDC held a hearing on December 7, 2009. (*Id.* at 16.) At the hearing, Milhouse refused to make a statement. (*Id.*) He refused to sign a "Waiver of Appearance" and refused to sign an acknowledgment of "Inmate Rights at a Discipline Hearing." (*Id.* at 20, 22.) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id.* at 16.) Milhouse was advised of the DHO hearing and advised of his rights at that hearing. (*Id.* at 19, 21-23.) He was given copies of "Duties of Staff Representative," "Notice of Discipline Hearing Before the DHO," and "Inmate Rights at Discipline Hearing."

(*Id*.)  Milhouse refused to sign the "Inmate Rights at Discipline Hearing" form.  (*Id*. at 22.)

The DHO held a hearing on January 19, 2010.  (*Id*. at 11-15.)  On that date, the DHO noted that he had attempted to hear the case on three previous occasions, December 8, 2009, December 16, 2009, and January 5, 2010, but Milhouse's requested staff representative at each hearing date either withdrew due to a reassignment or a conflict of interest.  (*Id*. at 11-12.)  On January 19, 2010, Milhouse received a Warden-appointed staff representative whom he agreed to.  (*Id*. at 12.)  At the hearing, Milhouse acknowledged that he understood his rights before the DHO and was ready to proceed with the hearing.  (*Id*.)  He presented no documentary evidence for the DHO to consider.  (*Id*.)  Milhouse testified that Section 11 of the incident report outlining the incident was inaccurate, and was completely fabricated by the reporting officer.  (*Id*.)  He testified that he did not commit the prohibited act.  (*Id*.)  The DHO also heard testimony from Milhouse's cellmate, Inmate Gray, who stated that he was the one who was "talk[ing] shit" to the reporting officer and that "both he and Milhouse could not have both been engaging in the exact same behavior at the same time."  (*Id*.)  The DHO noted that Milhouse made no complaints of procedural errors during the hearing.  (*Id*.)

The DHO relied on the incident report and investigation, the reporting officer's eyewitness written account, and the testimony of Milhouse and his cellmate, to

3

support his finding that Milhouse had committed the Code 205 violation, Engaging in a Sexual Act.  (*Id*. at 13.)  Milhouse was sanctioned with disallowance of 41 days of good conduct time, 60 days of disciplinary segregation, loss of 120 days of commissary privileges, loss of 120 days of telephone privileges, and loss of 120 days of visiting privileges.  (*Id*. at 14.)

## II.   Discussion

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.  These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules.  The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.  Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.  28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15.  If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing.  28 C.F.R. § 541.15.  Because Milhouse was charged with Engaging in a

Sexual Act, an offense in the high severity category, the matter was referred for a disciplinary hearing.

High category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

In his petition, Milhouse challenges only the sufficiency of the evidence used to find him guilty of the Code 205 violation. However, in an abundance of caution, the court will also address the procedural requirements in Milhouse's case.

### A.    Sufficiency of the Evidence

As stated above, Milhouse contests the sufficiency of the evidence relied upon in finding him guilty of the Code 205 violation. (Doc. 1 at 5.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison

disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id.*

In the instant case, Milhouse alleges the evidence was not sufficient for a finding of the Code 205 violation. (Doc. 1 at 5.) However, the record belies this assertion. The DHO specifically noted that he considered the incident report and investigation, as well as statements from Milhouse and his cellmate. (Doc. 8-1 at 13-14.) The DHO also based his finding on a review of Milhouse's Chronological Disciplinary Record, which documents that Milhouse sustained four prior disciplinary actions for Code 205 violations, Engaging in Sexual Acts. (*Id.* at 13.) The DHO credited the reporting officer's account of the incident over Milhouse's, stating,

> [I]f Milhouse's and Gray's testimony is to be believed, then the DHO would have to accept as fact that the reporting officer fabricated the entire incident report. Staff found to have engaged in fabrication or falsification of official government documents would risk losing employment with the Federal Bureau of Prisons as a result of violating the Standards of Employee Conduct. Therefore, the reporting officer has her livelihood to lose, and absolutely nothing to gain, by fabricating or falsifying the incident report in this case. Inmates Milhouse and Gray, however, stand[ ] to gain by being less than completely honest regarding the facts of the incident. More specifically, inmate Milhouse stands to avoid being sanctioned for misconduct which he knows to be repetitive in

> nature, and would likely result in more stringent sanctions being imposed as a matter of progressive discipline. Moreover, the DHO notes that inmate Milhouse has incurred four prior disciplinary actions for Code 205, Engaging in Sexual Acts. The fact that Milhouse has a significant documented history of committing prohibited acts involving misconduct of a sexual nature, directed at female staff, detracts from the credibility of his testimony that he did not commit a similar prohibited act in this case. Inmate Gray has a lengthy disciplinary history very similar to Milhouse's. This fact detracts from the credibility of Gray's testimony that neither he nor Milhouse committed a similar prohibited act in this case.

(*Id*. at 14.) The DHO also noted that Milhouse requested that video footage of the incident be reviewed to confirm that two other Officers, King and Marr, were present at the alleged incident. (*Id*. at 12-13.) The DHO informed Milhouse that the camera surveillance system does not have the ability to record events inside individual cells. (*Id*. at 12.) Therefore, the requested video footage was immaterial to determining whether Milhouse committed the prohibited act. (*Id*.) However, the DHO did review the footage for the date and time to determine whether Milhouse's requested staff witnesses were present at the same time as the reporting officer. (*Id*. at 12-13.) The DHO noted that the two officers, King and Marr, were present while the food trays were collected, but after the trays were collected, the reporting officer returned to Milhouse's cell alone and looked into the cell for a brief time. (*Id*. at 13.) Milhouse requested Officers King and Marr as witnesses at the DHO hearing. (*Id*.) The DHO obtained statements from the Officers, both of whom indicated that they were not standing in a position to observe Milhouse at the time of the alleged incident, so they

could not confirm or deny the allegation. (*Id*.) Based on those statements and his review of the video footage, the DHO did not call the two Officers as witnesses. (*Id*.)

In light of this evidence, the court finds that there was "some evidence" to support the DHO's decision. The documentary evidence and witness statement that provided an account of Milhouse's engaging in a sexual act confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Milhouse's claim that there was insufficient evidence to support the DHO's decision.

### B.     Notice of Charges and Investigation

The record demonstrates that Milhouse receive adequate notice of the incident report from the investigating officer. (Doc. 8-1 at 17.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." *Id*. Further, "[t]he Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the [DHO] . . . ." 28 C.F.R. § 541.17(a). The record in this case reflects that Milhouse received notice of the charges against him at 11:30 a.m. on December 4, 2009, within 24 hours of the incident which took place at 10:55 a.m. on that same day. (Doc. 8-1 at 16.) Further,

the DHO hearing was held on January 19, 2010.  (*Id*. at 11.)  Milhouse had been notified of this hearing at the UDC hearing on December 7, 2009.  (*Id*. at 16.)

Additionally, the record reflects that the charges against Milhouse were promptly investigated.  (*Id*. at 17.)  Following the issuance of the incident report, a prompt investigation must be undertaken.  28 C.F.R. § 541.14(b).  However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded.  *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).  The record reflects that a BOP official, Thomas Brouse, conducted an investigation on December 4, 2009, the same morning the incident occurred.  (Doc. 8-1 at 17.)  In his report, the investigator noted that he advised Milhouse of his rights and gave him a copy of the report.  (*Id*.)  He noted that Milhouse made no statement and displayed a poor attitude.  (*Id*.)  Milhouse did not request a staff representative or any witnesses at that time.  (*Id*.)  Since the record shows that an investigation was conducted by a BOP official in a prompt manner and Milhouse was timely delivered the incident report, the court concludes that Milhouse was not prejudiced by a violation of BOP regulations such as

failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C. Representation at DHO Hearing

The record reflects that Milhouse was given the opportunity to have staff representation at the DHO hearing. (*Id.* at 11-12.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceedings. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996); *see also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, the DHO documented that the hearing was rescheduled several times due to the unavailability of the requested staff representative. (Doc. 8-1 at 11-12.) Finally, on January 19, 2010, the hearing proceeded after the Warden appointed a staff representative, with Milhouse's consent. (*Id.* at 12.) The staff representative indicated that he met with Milhouse prior to the hearing and that Milhouse made no specific requests of him as staff representative. (*Id.*) The staff representative also

indicated that it appeared that Milhouse's due process rights had been observed and that Milhouse was contesting the incident report's accuracy of the description of the incident. (*Id*.) As there is no allegation that Milhouse is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D. Statement and Witnesses

The record reflects that prior to the DHO hearing, Milhouse was advised of his rights with regard to making a statement and presenting witness testimony and indicated that he understood. (*Id*. at 11.) However, the DHO is not required to call witnesses. "The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO." 28 C.F.R. § 541.17(c). Thus, because Milhouse did in fact call witnesses, and the DHO found after a review of video footage and statements that two of those witnesses were not necessary, the court cannot find that the lack of further witnesses at the DHO hearing resulted in a violation of Milhouse's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony.

11

**E.     Sanctions**

The sanctions that may be imposed upon a finding of guilt of a high category offense include, *inter alia*, forfeiting earned statutory good time, up to 30 days of disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Here, the court recognizes that the DHO sanctioned Milhouse to 60 days of disciplinary segregation rather than an amount of 30 days or less. However, the DHO noted in his reasoning for imposing such sanctions the following:

> Engaging in sexual acts in a correctional institution, particularly inmates manually stimulating their genitals in view of female staff, is demeaning to staff and undermines their authority. Undermining staff authority ultimately jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Milhouse's period of incarceration. Increased sanctions with regard to Disallowed Good Conduct Time and disciplinary segregation are imposed based on the repetitive nature of the prohibited act committed. Loss of commissary, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Loss of these privileges for a substantial period of time is warranted, again, based on the repetitive nature of the prohibited act committed.

(Doc. 8-1 at 14-15.) Given Milhouse's history of engaging of sexual acts, as noted by the DHO, the DHO's reasons for imposing such sanctions are justified. In light of the well-settled standard that prison authorities are generally given wide discretion in

determining matters of security, *see Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."), the court finds that Milhouse is not entitled to relief on this ground.

Moreover, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, Milhouse is not entitled to relief.

### III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                   United States District Judge

Dated: June 16, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,**       :       **CIVIL NO. 1:CV-11-00294**
:
**Petitioner**       :       **(Judge Rambo)**
:
v.       :
:
**B.A. BLEDSOE,**       :
:
**Respondent**       :

## **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

            s/Sylvia H. Rambo
            United States District Judge

Dated: June 16, 2011.